UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAMRAN M. ELLINI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | Civ. No. 4:11-cv-01655 |
| | § | |
| AMERIPRISE FINANCIAL, INC., | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendants Ameriprise Financial, Inc.'s and RiverSource Distributors, Inc.'s Motion for Summary Judgment ("Motion"). (Doc. No. 14.) After considering the Motion, all responses and replies thereto, and the applicable law, the Court concludes that the Motion should be **GRANTED.**

### I. FACTS

Kamran Ellini ("Plaintiff" or "Ellini") is a 43-year-old Iranian-American male. (Doc. No. 1-1, Pl.'s Orig. Compl. ¶ 4.1; Mot. Summ. Jgmt at 3.) In 1998, Plaintiff began working for Ameriprise Financial ("Ameriprise") as a financial advisor. (Pl.'s Orig. Compl. ¶ 4.2; Ex. A to Mot. Summ. Jgmt, Kamran Ellini Dep. 17:24-18:6.) In January 2008, Plaintiff was hired as RiverSource Regional Vice President ("RVP") for the P1[1] Texas territory of Ameriprise's RiverSource Distributors, Inc. ("RiverSource") insurance wholesaling business. (Pl.'s Orig. Compl. ¶ 4.2; Ellini Dep. 19:2-5, 72:12-13.) In early 2008, Todd Baker ("Baker") replaced Plaintiff's supervisor. (Pl.'s Orig. Compl. ¶ 4.2; Mot. Summ. Jgmt at 3.) In September 2008,

---

[1] The term "P1" stands for "employee advisor." When Plaintiff was promoted, certain RVPs worked with employee advisors, or P1s, while others worked with P2s, or franchise advisors. (Ex. B to Resp. to Mot. Summ. Jgmt, Todd Baker Dep. 28:1-14.) RVPs are responsible for meeting with P1s or P2s and helping them uncover their clients' insurance needs. (*Id.* 28:18-20.)

Plaintiff's territory was restructured, and he became responsible for both the P1s and P2s in his new territory. (Ellini Dep. 72:13-14.)

Plaintiff claims that, as soon as Baker replaced Plaintiff's prior supervisor, he asked Plaintiff what his nationality was and why his name "was spelled differently." (Pl.'s Orig. Compl. ¶ 4.3.) Baker allegedly started requiring Plaintiff to record his appointments, activities, and expenses. (*Id.*) According to Plaintiff, Baker did not make these demands of any other RVP. (*Id.*) Plaintiff contends that, even though he met all expectations, "Baker focused on Plaintiff's weaknesses and constantly threatened Plaintiff's job." (*Id.* ¶ 4.2.) When Plaintiff's Regional Sales Director ("RSD")[2] left, Baker refused to replace her; furthermore, Baker did not permit Plaintiff to have a "scheduler"[3] until January 2009. (*Id.* ¶ 4.5; Mot. Summ. Jgmt at 7-8.)

On June 29, 2009, Baker gave Plaintiff a verbal warning about his performance problems. (Pl.'s Orig. Comp. ¶ 4.6; Mot. Summ. Jgmt at 7; Ex. D-10 to Mot. Summ. Jgmt, Sept. 18, 2009 Written Warning from Todd Baker to Kamran Ellini ("Sept. 2009 Written Warning") at 2.) Baker informed Plaintiff that Plaintiff had to increase the percentage of time he spent with P2s, a requirement that Plaintiff claims he was not previously aware of. (Pl.'s Orig. Compl. ¶ 4.6; Ellini Dep. 172:8-10.) On September 18, 2009, Baker issued a written warning to Plaintiff that stated that Plaintiff was not meeting expectations ("September 2009 Written Warning"). (Sept. 2009 Written Warning at 1-3.) On December 2, 2009, Baker issued a final written warning ("December Written Warning"). (Pl.'s Orig. Compl. ¶ 4.8; Ex. D-11 to Mot. Summ. Jgmt, Dec. 2, 2009 Final Written Warning from Todd Baker to Kamran Ellini

---

[2] According to Plaintiff's Response, RSDs contact advisors to identify insurance opportunities and take incoming calls from advisors to help support a sale or refer the advisor to RVPs. (Resp. to Mot. Summ. Jgmt at 5.)
[3] As described in Plaintiff's Response, schedulers contact advisors in RVPs' territories and fill up RVPs' calendars with one-on-one appointments. (Resp. to Mot. Summ. Jgmt at 5.)

("Dec. 2009 Written Warning") at 1-3.) Plaintiff contends that the performance issues outlined in the September 2009 Written Warning and the December 2009 Written Warning "were subjective and were not required measures for any other" RVP. (Pl.'s Orig. Compl. ¶ 4.9.) On January 27[4], Plaintiff contacted Human Resources to complain that he was treated less favorably than the other RVPs. (*Id.* ¶ 4.10; Ex. D-16 to Mot. Summ. Jgmt, Employee Relations Group Case Management System Notes of Kamran Ellini Call ("ERG Notes") at 2.) Plaintiff was terminated within a few days. (Pl.'s Orig. Compl. ¶ 4.11; Mot. Summ. Jgmt at 11; Ex. 1 to Resp. to Mot. Summ. Jgmt, Kamran Ellini Aff. ¶ 22.) Plaintiff insists that he had met all of the expectations in the final December 2009 Written Warning, as well as in his year-end review. (Pl.'s Orig. Compl. ¶ 4.11.)

Plaintiff filed this lawsuit in state court alleging that Ameriprise and RiverSource (collectively, "Defendants") had violated the Texas Commission on Human Rights Act ("TCHRA") by discriminating against him based on his age (over 40), religion (misperceived as Muslim), and national origin (Iranian American). (Pl.'s Orig. Compl. ¶ 4.13.) Plaintiff brought this lawsuit within sixty days from his receipt of the Texas Workforce Commission-Civil Rights Division's issuance of a Notice of Right to File a Civil Action, and completed all administrative conditions precedent to filing this lawsuit. (*Id.* ¶¶ 5.1-6.2.) Defendants removed this case pursuant to this Court's diversity jurisdiction. (Doc. No. 1.) Defendants have filed a Motion for Summary Judgment (Doc. No. 14), to which Plaintiff filed a Response (Doc. No. 19). Defendants filed a Reply (Doc. No. 22).

## II. LEGAL STANDARD

---

[4] There is a contradiction in the record as to the exact date of the call to ERG. According to Plaintiff's affidavit, the call took place on January 26. (Ellini Aff. ¶ 22.)

The party seeking summary judgment bears the burden of demonstrating that there is no actual dispute as to any material fact of the case. *Willis v. Roche Biomed. Lab.*, 61 F.3d 313, 315 (5th Cir. 1995) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)); FED. R. CIV. P. 56(a). In order to survive summary judgment, Plaintiff "must raise a 'genuine issue as to a[] material fact' that [Defendant] discriminated against her." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir 2001) (quoting FED. R. CIV. P. 56(c)). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2011) (internal quotations omitted). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* Furthermore, the summary judgment standard "provides that the mere existence of some factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be genuine and material." *Willis*, 61 F.3d at 315. First, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law are material." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Second, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248).

Conclusory allegations and unsubstantiated assertions do not satisfy the nonmovant's summary judgment burden. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) ("Mere conclusory

allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment."). "Nor may non-movants rest upon mere allegations made in their pleadings without setting forth specific facts establishing a genuine issue worthy of trial." *Topalian*, 954 F.2d at 1131. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the precise manner in which that evidence support[s] [its] claim[s]." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (internal quotation omitted).

### III. ANALYSIS

The TCHRA prohibits employers from discriminating against individuals based on race, color, disability, religion, sex, national origin, or age. The TCHRA provides:

> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

Tex. Lab. Code § 21.051. Texas courts evaluate discrimination claims under the TCHRA using federal employment discrimination law, as the Texas Legislature, in adopting the act, "intended to correlate state law with federal law in employment discrimination cases." *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (citing *Ysleta Indep. Sch. Dist. v. Monarrez*, 17 S.W.3d 915, 917 (Tex. 2005)). *See also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999) ("[T]he law governing claims under the TCHRA and

Title VII is identical." (citing *Colbert v. Georgia-Pacific Corp.*, 995 F.Supp. 697 (N.D. Tex. 1998))).

Under the burden-shifting framework for discrimination claims first developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff who seeks to prove discrimination through indirect or circumstantial evidence must first establish a prima facie case of discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000). A plaintiff establishes a prima facie case by showing that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (footnote omitted). "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Monarrez*, 177 S.W.3d at 917 (footnotes omitted). "To prove discrimination based on disparate discipline, the disciplined and undisciplined employees' misconduct must be of comparable seriousness." *Id.* (footnote and quotations omitted). In other words, the misconduct for which the plaintiff was discharged must be nearly identical to that engaged in by an employee who the company retained. *Id.* at 918 (citing *Smith v. Wal-Mart Stores, Inc.*, 891 F.2d 1177, 1180 (5th Cir. 1990)).

If a plaintiff succeeds in establishing a prima facie case, the burden is shifted to the defendant "to produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason." *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097

(quotations omitted). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Id.* (quotations omitted). "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *McCoy*, 492 F.3d at 557 (footnote omitted). "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *Id.* (footnote omitted). Alternatively, the plaintiff can prove that the defendant operated with mixed motives—in other words, "that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination." *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005) (footnote omitted).

### A. Discrimination Claims

Plaintiff has failed to establish a prima facie case of discrimination. There is no genuine issue of material fact as to whether Plaintiff was replaced for the purposes of making a prima facie case. Nor is there any evidence in the record to support Plaintiff's contention that he was treated less favorably than similarly situated individuals outside of his protected class. Likewise, there is not even a scintilla of evidence to suggest Plaintiff was otherwise discharged because of his age. Even if Plaintiff were able to establish a prima facie case, however, Defendants have offered a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff has not presented evidence of pretext or mixed motives. Finally, Plaintiff's evidence is insufficient to support a hostile working environment claim.

#### i. Age

"'The TCHRA was enacted to coordinate and conform with federal law under Title VII and the ADEA.'" *Harris v. Martinsville Indep. Sch. Dist.*, 448 Fed.Appx. 474, 477 (5th

Cir. 2011) (unpublished) (quoting *Sanders v. Andarko Petroleum Corp.*, 108 Fed.Appx. 139, 147 (5th Cir. 2004)). *See also McClaren v. Morrison Management Specialists, Inc.*, 420 F.3d 457, 462 n.4 (5th Cir. 2005) ("Texas's provision for age discrimination claims, Tex. Lab. Code Ann. §§ 21.001-.556, was designed in part to bring Texas 'in line with federal laws addressing discrimination.'" (quoting *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996))). "To demonstrate age discrimination a 'plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.'" *Rachid v. Jack In the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (quoting *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003)). *See also McClaren*, 420 F.3d at 462 (utilizing the same standard in a TCHRA age discrimination case).

Defendants do not dispute that Plaintiff was discharged, was qualified for the position, and was within the protected class. Defendants assert that Plaintiff cannot establish the fourth element of the test, however. (Mot. Summ. Jgmt at 20.) The only evidence as to the age of Brian Seastone ("Seastone"), the individual who eventually took over Plaintiff's territory, indicates that he was Plaintiff's age or older. (Baker Dep. 35:6-13.) Furthermore, "'[w]hen a terminated employee's job duties are distributed among other employees after termination, those employees do not replace the terminated employee.'" *Martin v. Bayland, Inc.*, 403 F.Supp.2d 578, 583 (S.D. Tex. 2005), *aff'd* 181 F.App'x 422 (5th Cir. 2006) (quoting *Baker v. Gregg Cnty*, 33 S.W.3d 72, 81-82 (Tex.App.-Texarkana 2000, writ dism'd)). *See also Rawline v. Capital Title of Tex., LLC*, No. H–11–2379, 2012 WL 2194054, at *3 (S.D. Tex. June 13, 2012); *Hardy v. Shell Chemical Co.*, 693 F.Supp.2d 611, 620 n.25 (E.D. La. 2010);

*Horak v. Glazer's Wholesale Drug Co., Inc.*, No. 3:05-CV-901-K, 2006 WL 2017119, at *4 (N.D. Tex. July 19, 2006); *Martin v. Bayland, Inc.*, 403 F.Supp.2d 578, 583 (S.D. Tex. 2005); *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992).[5] Therefore, Plaintiff was not actually "replaced" for the purposes of establishing a prima facie case.

Nor is there evidence that Plaintiff was otherwise discharged because of his age. Plaintiff explains that Baker never made any statements to him about his age, other than asking how old he was. (Ellini Dep. 82:16-25.) Plaintiff does describe how a number of employees, including Baker, made "statements about how the image was changing of the type of employees they wanted in these roles and that they want young go-getters." (*Id.* 84:5-8.) Plaintiff repeatedly emphasized that these statements were "[n]ot directed" at him, however, but rather were just "more [about] the environment." (*Id.* 84:14-22.) "Statements evince unlawful discrimination only if the comments 'first, demonstrate discriminatory animus and, second, [are] made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker.'" *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 351 (5th Cir. 2007) (quoting *Laxton v. Gap, Inc.*, 333 F.3d 572, 583 (5th Cir. 2003)). There is no evidence that Baker made the comments about hiring young employees close in time to Plaintiff's termination; furthermore, the comments described are vague and not at all related to the employment decision at issue. Thus, they are insufficient to demonstrate discriminatory animus. *Id.* at 351-52.[6]

---

[5] The *Guerrero v. Preston* court suggested that an employee can make a prima facie case if the existing employees who replaced him ceased to perform their previous duties. No. H–08–2412, 2009 WL 2581568, at *4 (S.D. Tex. Aug. 18, 2009). As in *Guerrero*, however, there is no evidence before this Court that Seastone stopped performing his prior job duties.

[6] There appears to be some confusion in the case law about the test courts should employ when evaluating whether comments qualify as mere "stray remarks" that are insufficient to defeat summary judgment. In addition to the test cited here, another Fifth Circuit test provides that "'[r]emarks may serve as sufficient evidence of age discrimination if they are: 1) age related, 2) proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at

The evidence also fails to support a hostile work environment claim. To establish a hostile working environment claim, Plaintiff must prove: (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment complained of was based on age; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001); *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986)). To effect a term, condition, or privilege of employment, the conduct "must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)).

Importantly, "[i]n addition to the Plaintiff's subjective perception of the abusiveness of the environment, the environment must be such that a reasonable person would find it

---

issue.'" *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010) (quoting *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 683 (5th Cir. 2001)). The case law is unclear as to whether this four-prong test applies only to direct discrimination claims, or to both direct discrimination and circumstantial discrimination claims. *Stippick v. Stone & Webster Services, LLC*, No. H–10–0290, 2011 WL 564081, at *9 (S.D. Tex. Feb. 8, 2011) (citing cases). This Court agrees with the court's reasoning in *Stippick v. Stone & Webster Services* that the proper test for *circumstantial* cases, such as this one, is the two-part test outlined in *Laxton*. *Id.* at *10. However, the Court notes that Plaintiff could not succeed in making a case of direct discrimination based on these comments. Indeed, "[i]n order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." *Moss*, 610 F.3d at 929 (quotations omitted). There is no evidence that the comments were close in time to the employment decision or were related to the employment decision. Further, the comments are not direct and unambiguous.

hostile or abusive." *Vallecillo v. U.S. Dept. of Housing & Urban Development*, 155 Fed.Appx. 764, 767 (5th Cir. 2005) (unpublished) (citing *Harris*, 510 U.S. at 21-22, 114 S.Ct. 367; *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003)). The comments described by Plaintiff do not rise to the level of a hostile work environment. The comments were infrequent, were not severe, threatening, or humiliating, and would not unreasonably interfere with an employee's work performance. Indeed, a reasonable person would not find such comments hostile or abusive. "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). Defendants are entitled to summary judgment as to Plaintiff''s age discrimination claim.

### ii. Religion

Plaintiff fails to provide evidence of employees who were nearly identical to Plaintiff in terms of misconduct and circumstances. *Perez v. Tex. Dept. of Criminal Justice, Inst'l Div.*, 395 F.3d 206, 213 (5th Cir. 2004). Additionally, as explained above, Plaintiff was not "replaced" by someone outside of his protected class. Rather, his duties were redistributed among existing employees. Therefore, Plaintiff cannot establish a prima facie case of discrimination based on his religion. Likewise, comments by coworkers that Plaintiff was a "towel head" and a "camel head," or referring to him by his middle name, Mohammed (Ellini Dep. 61:2-63:12), cannot support a hostile work environment claim. Indeed, the Fifth Circuit has emphasized that "'mere utterance of an … epithet which engenders offensive feelings in an employee does not sufficient affect the conditions of employment.'" *Vallecillo*, 115 Fed.Appx. at 767 (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367). As such, the Fifth Circuit

has determined that comments referring to a Hispanic person as "Che Guevara" and "aggressive Hispanic" do not rise to the level of a hostile work environment. *Id.* Although unpleasant, these remarks about Plaintiff qualify as offhand comments, teasing, or isolated incidents. They would not cause a reasonable person to consider the work environment hostile or abusive, or otherwise unreasonably interfere with an employee's work performance. There is no genuine issue of material fact as to Plaintiff's religious discrimination claim.

### iii. National Origin

Plaintiff alleges that he was discriminated against based on his national origin, Iranian American. There is no evidence in the record demonstrating that Plaintiff was similarly situated to non-Iranian Americans who had similar performance problems but who were not fired. Plaintiff claims that six other employees did not meet the "85% of goal." (Resp. to Mot. Dismiss at 5.) However, Plaintiff was not disciplined solely for his failure to meet "85% of goal"; Plaintiff was also disciplined for not meeting with enough of his top 50 AFG advisors, failing to uncover case opportunities in meetings and achieving meeting objectives, failing to organize his calendar and advisor information so as to create an effective coverage plan and provide effective cover-up, inadequate presentations, low product and strategy knowledge, and averaging only 60% of "True to Loop." (Sept. 2009 Written Warning at 1-2; Dec. 2009 Written Warning at 1-2.) There is no evidence in the record that other employees were similarly situated to Plaintiff in terms of all of these performance problems. Nor is there evidence that other employees were similarly situated in terms of similar standards, supervisors, and conduct. As explained above, Plaintiff was not replaced by an employee outside of his protected class. Nor do the descriptions of Plaintiff as a "camel jockey" or

12

"towel head" establish a claim of a hostile working environment. Defendants are entitled to summary judgment on Plaintiff's national origin claim.

### iv. Pretext or Mixed Motives

Even if Plaintiff had succeeded in making a prima facie case of discrimination, however, Defendants have presented evidence showing a legitimate, non-discriminatory reason for firing Plaintiff: He was not meeting performance standards. "To establish pretext, [a plaintiff] must show that [defendants'] 'proffered explanation is false or unworthy of credence.'" *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (quoting *Laxton*, 333 F.3d at 578). Alternatively, a plaintiff can prove mixed motives. "Whereas under the pretext prong of the *McDonnell Douglas* analysis, the plaintiff aims to prove that discriminatory motive was the determinative basis for his termination, under the mixed-motives framework the plaintiff can recover by demonstrating that the protected characteristic … was a motivating factor in the employment decision." *Rachid*, 376 F.3d at 310 (citation omitted). If a plaintiff succeeds in proving mixed motivates, the employer then bears the burden of showing "that the same adverse employment decision would have been made regardless of discriminatory animus." *Id.* at 312 (quotation omitted).

Plaintiff's only basis for proving pretext or mixed motives are a few allegedly discriminatory remarks. Importantly, however, discriminatory remarks are not probative if they are the *only* evidence of pretext. *Williamson v. Am. Nat. Ins. Co.*, 695 F.Supp.2d 431, 447 (S.D. Tex. 2010) (citing *Palasota*, 342 F.3d at 577); *Cooper v. Wal-Mart Transp., LLC*, 662 F.Supp.2d 757, 789 (S.D. Tex. 2009) (citation omitted). Furthermore, the Court has already explained above that the few comments related to age—Plaintiff's only age-related evidence of pretext or mixed motives—do not exhibit discriminatory animus. The only

evidence of pretext or mixed motives for Plaintiff's national origin and religion claims is a handful of comments made by RVPs, who referred to Plaintiff as "towel head," "camel head," and by his middle name, Mohammed. (Ellini Dep. 61:2-63:12.) These individuals did not have any supervisory authority over Plaintiff and, indeed, had no input in any assessment of his performance. (*Id.* 63:13-64:7.) Plaintiff does not recall his supervisor, Baker, ever referring to him by any of these names. (*Id.* ¶ 64:8-19.) As these comments were not made by anyone with authority over Plaintiff's position, they do not serve as evidence of pretext or mixed motives.

Although Plaintiff complains about Defendants' employment practices and about how Baker treated him, the TCHRA "'does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 346 (5th Cir. 2007) (quoting *Upshaw v. Dallas Heart Group*, 961 F.Supp. 997, 1002 (N.D. Tex. 1997)). Plaintiff's allegations are essentially based on his suspicions. A mere "'shadow of a doubt'" is insufficient to support pretext, and the Fifth Circuit "'has consistently held that an employee's subjective belief of discrimination alone is not sufficient to warrant judicial relief.'" *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 403 (quoting *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999)). "'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quoting *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)). Thus, even if Plaintiff were able to succeed in making a prima facie case, the evidence could not support Plaintiff's contention that Defendant's reasons were

a pretext for discrimination, or that age, religion, or national origin were a motivating factor in the termination decision.

### B. Retaliation Claim

It is unclear whether Plaintiff actually alleges retaliation in his Original Complaint. Nonetheless, both parties put forward arguments relating to retaliation. To succeed on a retaliation claim, Plaintiff must make a prima facie showing that (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)). "Protected activities include: (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing." *Hernandez v. Grey Wolf Drilling, L.P.*, No. 04-10-00730-CV, 2011 WL 2471559, at *5 (Tex.App.-San Antonio June 22, 2011, no pet.) (citations omitted); *see also* TEX. LAB. CODE ANN. § 21.055. "An adverse employment action short of discharge will support a claim for retaliation if a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Niu v. Revcor Molded Products Co.*, 206 S.W.3d 723, 731 (Tex.App.-Fort Worth 2006, no pet.) (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). If a plaintiff succeeds in making a prima facie case, the burden shifts to the defendant to provide legitimate, non-discriminatory reasons for its conduct. *Davis*, 383 F.3d at 319. "If

the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation." *Id.*

There is no evidence in the record that Plaintiff engaged in protected conduct. Although Plaintiff did contact ERG, Plaintiff did not notify ERG that he believed he was being discriminated against. (ERG Notes at 2.) Plaintiff's complaints thus did not qualify as protected activity. *See Harris-Childs v. Medco Health Solutions Inc.*, 169 Fed.Appx. 913, 916 (5th Cir. 2006) ("Although her deposition demonstrates she complained of unfair treatment … [the plaintiff] has not demonstrated that she put the employer on notice that her complaint was based on racial or sexual discrimination."); *Arora v. Starwood Hotels & Resorts Worldwide, Inc.*, 294 Fed.Appx. 159, 162 (5th Cir. 2008) ("While ungainly, the complained about behavior does not involve an employee being treated unfairly due to race or sex, thus the complaints are not protected activity."); *Spinks v. Trugreen Landcare, LLC*, 322 F.Supp.2d 784, 796 (S.D. Tex. 2004) ("Engaging in a protected activity requires complaining of some sort of discrimination that is covered by the TCHRA."). As such, there is no genuine issue of material fact as to Plaintiff's retaliation claim.

## IV. CONCLUSION

For the reasons explained above, Defendants' Motion (Doc. No. 14) is hereby **GRANTED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 25th day of July, 2012.

*[signature]*

**KEITH P. ELLISON**
**US DISTRICT COURT JUDGE**